UNITED STATES of America

v.

Jackson HOLMES.

Crim. No. H–87–47(MJB).

United States District Court, D. Connecticut.

Oct. 15, 1987.

James Genco, Asst. U.S. Atty., Hartford, Conn., for plaintiff.

Gary Weinberger, Asst. Federal Public Defender, M. Daniel Friedland, Hartford, Conn., for defendant.

### RULING ON DEFENDANT'S COMPETENCY TO STAND TRIAL

BLUMENFELD, Senior District Judge.

#### I. *Introduction*

The issue to be decided is the competency of the defendant Jackson "Rip" Holmes to

stand trial on two counts of threatening a person protected by the Secret Service, in violation of 18 U.S.C. § 879(a)(2). The government originally moved pursuant to 18 U.S.C. § 4241(a) to have the defendant's competency determined. The matter was heard by Magistrate Eagan, who issued a Recommended Ruling finding Mr. Holmes incompetent to stand trial. The defendant filed an objection to the Magistrate's recommendation and moved for an additional evidentiary hearing before this court, pursuant to Rule 2 of the Local Rules for United States Magistrates. As a result the defendant's competency to stand trial was reviewed *de novo*, and the additional evidentiary hearing was granted as part of such review.[1] For the reasons set forth below, the court finds Mr. Holmes competent to stand trial.

## II. *Background*

The two-count indictment stems from letters sent by the defendant to John E. "Jeb" Bush, son of the Vice President, allegedly threatening him with serious bodily harm and death. Indictment at 1–2. The letters relate to what medical experts testifying for both the government and the defendant agree is a mental delusion the defendant harbors concerning Jeb Bush. The defendant believes that Mr. Bush is part of a conspiracy involving members of the United States Secret Service and others to test experimental drugs on him. Defendant's Memorandum of Law in Objection to Magistrate's Recommended Ruling, at 4–8. If they prove effective on him, he expects these drugs to be used to poison John Hinckley, the man who shot and wounded President Reagan and others in 1981. *Id.*

at 4–5. Mr. Holmes believes that drug testing actually began in 1983, when he was committed involuntarily to a psychiatric hospital. *Id.* There he was given psychotrophic medication capable of causing a debilitating side effect known as tardive dyskinesia, from which Mr. Holmes claims he presently suffers. *Id.*

Upon granting the government's motion regarding Mr. Holmes' competency to stand trial Magistrate Eagan ordered the defendant to be examined by a local psychiatrist, Dr. Walter A. Borden. Recommended Ruling at 2. Mr. Holmes, however, refused to submit to Dr. Borden's examination. *Id.* at 3. Instead he was committed to the custody of the Attorney General, and sent to the Federal Correctional Institution at Butner, North Carolina, where he was observed by government doctors for more than five weeks. *Id.*

A competency hearing was held before Magistrate Eagan in July of this year. On the first day of testimony defendant Holmes disrupted the proceedings so totally that he had first to be bound and gagged, and then to be removed from the courtroom entirely.[2] Recommended Ruling at 3–4. Dr. John McWay, Jr., from the Butner F.C.I., testified for the government that Mr. Holmes was incompetent to stand trial. *Id.* at 6–9.[3] The defense had intended to call Dr. Austin McCauley, Director of Psychiatry at Hartford's Saint Francis Hospital, to testify that Mr. Holmes was competent to stand trial, but decided not to call him in light of the defendant's court-

---

**1.** Pursuant to Rule 2 the reviewing court may rely on the entire record developed before the Magistrate, as well as such additional evidence as the court, in its discretion, chooses to receive. Local Rules for United States Magistrates, Rule 2.

**2.** Mr. Holmes' agitation seems to have been due in part to the Magistrate's refusal to allow the defendant to represent himself. In response to this decision on the part of the Magistrate, defendant Holmes also attempted repeatedly and vociferously to fire the lawyers named to represent him, a request which the Magistrate refused to honor quite appropriately under the circumstances.

**3.** Dr. McWay admitted on cross-examination that in making his competency determination he had relied upon information contained in the defendant's Secret Service file. The defendant filed subsequent motions to compel discovery of the contents of the file, or in the alternative for an *in camera* inspection of the file by the court, in order to confirm the doctor's assessment of the delusional nature of defendant Holmes' hypothesis concerning Jeb Bush. Although defendant's discovery request was denied, the court did conduct an *in camera* inspection of the defendant's file, which substantiated the government's contention.

room behavior. *Id.* at 4. Instead defense counsel moved for, and was granted, a two week continuance. *Id.* When the hearing resumed defendant Holmes took the stand himself, and remained composed and cooperative throughout direct examination by defense counsel and cross-examination by the government. *Id.* Notwithstanding the defendant's composure on the second day of the competency hearing, the Magistrate recommended a ruling of incompetency, based upon a conclusion that Mr. Holmes' mental problems rendered him "unable to assist in his defense." Recommended Ruling at 11–12.

At the evidentiary hearing this court held subsequent to the issuance of the Magistrate's Recommended Ruling more medical experts offered their opinions concerning the defendant's competency to stand trial: one on behalf of the government, and three on the defendant's behalf. Dr. Walter Borden[4] testified for the government that Mr. Holmes was incompetent to stand trial because his delusions would undermine his judgment concerning the legal questions of his defense in such a way that he would be unable adequately to assist counsel.[5] Doctors Julia Ramos–McKay, John Felber, and Jeremy August were all called by the defense to testify that Mr. Holmes was indeed competent to stand trial. These experts agreed as to the delusional nature of the defendant's thinking, but found that these delusions would not prevent the defendant, at least presently, from assisting counsel in his defense. Both Doctors Felber and August stated that the intensity of Mr. Holmes' mental illness fluctuates, such that it is entirely possible for the defendant to be presently capable of assisting counsel, even if he was incompetent to do so at an earlier time.

**III. *Discussion***

Title 18 U.S.C. § 4241(d) sets out a two-prong test for determining competency to stand trial. To be found competent the defendant must be able "to understand the nature and consequences of the proceedings against him" and must be able "to assist properly in his defense...." 18 U.S.C. § 4241(d). There have been no direct allegations that the defendant, who the record discloses is highly intelligent and has a law degree, fails to comprehend the charges against him or the implications thereof. Thus the relevant determination in this case is whether defendant Holmes' mental condition renders him unable to assist his lawyers in his defense. In considering the issue of a defendant's mental competence to assist counsel in defending him, the Supreme Court has demanded that district courts determine whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding...." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). The application of this broad dictate to particular circumstances is a matter "left to the sound discretion of the district court." *Newfield v. United States,* 565 F.2d 203, 206 (2d Cir.1977).

In assessing defendant Holmes' ability to assist counsel both Dr. Borden testifying for the government and Magistrate Eagan placed great weight on defendant Holmes' disruptive courtroom behavior, and on the apparent inability of his lawyers to control him.[6] A defendant's decision to behave obstreperously and to ignore his lawyers' wishes, however, is not synonymous with an inability to consult with counsel with a reasonable degree of rational understanding. Indeed there is no necessary relation between the two. Furthermore, since *Illinois v. Allen,* 397 U.S. 337, 90

**4.** Dr. Borden examined the defendant at Mr. Holmes' own request, although he was called to testify as the government's witness owing to the conclusion he reached regarding the defendant's competency.

**5.** Dr. Borden expressed concern about the possibility the defendant might represent himself at trial, an undertaking the doctor was confident Mr. Holmes could not handle competently. The

court notes, however, that the defendant's competency to represent himself at trial is not to be decided here.

**6.** Dr. Borden stated that the defendant's promise to disrupt future proceedings if his choices concerning possible defenses were not honored was central to the doctor's determination of incompetency.

S.Ct. 1057, 25 L.Ed.2d 353 (1970), a long line of cases having nothing whatsoever to do with mental competency grant the court the tools with which to control disorder in the courtroom. *See, e.g., Williams v. Lefevre,* 551 F.Supp. 1000 (S.D.N.Y.1982) (binding and gagging of disruptive defendant); *Russ v. Israel,* 531 F.Supp. 490 (E.D. Wis.1982) (removal of disruptive defendant from courtroom): *see also* N. Dorsen and L. Friedman, *Disorder in the Courtroom,* 90–130 (1973). As sparingly as these measures ought properly to be employed, they are, in this court's estimation, preferable to a finding of incompetency as a means of assuring courtroom decorum.

The defendant's experts appear to have focused their attention more narrowly on the question of Mr. Holmes' *present ability* to assist counsel, as distinguished from past examples of his unwillingness to do so. Accordingly, Dr. Ramos–McKay implied the defendant may well again ignore advice of counsel in future proceedings without demonstrating thereby a mental state *incapable* of the rational understanding necessary to consult with counsel. Dr. Felber appeared not to rule out the possibility that such rational understanding might have failed the defendant in the past, and might again fail him in the future, but found the defendant *presently* capable of consulting with counsel, as the *Dusky* standard requires. The opinion of Mr. Holmes' lawyers on this issue is also probative. If the defendant were currently unable to assist counsel in his defense "it logically follows that his attorney[s] would [be] the first to know." *United States v. Clark,* 617 F.2d 180, 186 n. 11 (9th Cir.1980).

In finding defendant Holmes presently competent to stand trial the court notes finally the interests at stake in its determination. While due process principles protect the incompetent defendant from standing trial on charges against which he or she is mentally incapable of defending, *Brown v. Warden, Great Meadow Correctional Facility,* 682 F.2d 348, 352 (2d Cir. 1982), *cert. denied,* 459 U.S. 991, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982), the same principles also protect the competent defendant's right to proceed to trial. *United States v. Blohm,* 579 F.Supp. 495, 499 (S.D.N.Y. 1983). Particularly in a case like the instant one, where the defendant rigorously asserts his mental competence, and where the result of an incompetency finding would be commitment to a mental institution for an extended period, 18 U.S.C. § 4241(d), without the benefit of a prior determination of guilt or innocence on the underlying criminal charges, *see Brown,* 682 F.2d at 353, the court must assure itself that the proffered evidence of incompetency is constitutionally sufficient.[7] In the case before it the court is convinced, on the basis of both the record developed before the Magistrate and the additional evidence received subsequently, that the defendant is indeed presently competent to stand trial.

SO ORDERED.

---

7. The relevant case law of this and other circuits places the burden of proof regarding the competency issue on the government, regardless of who raises the matter. *See, e.g., Brown,* 682 F.2d at 349; *see also United States v. DeGilio,* 538 F.2d 972, 987 (3d Cir.1976), *cert. denied sub nom. Lupo v. United States,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). In the typical case it is the government that urges the defendant's competency to stand trial. *See, e.g., United States v. Zovluck,* 425 F.Supp. 719 (S.D.N.Y. 1977); *United States ex rel. Bornholdt v. Ternullo,* 402 F.Supp. 374, 377 (S.D.N.Y.1975). In the atypical case where, as here, the defendant himself argues he is competent to stand trial, it would appear nonsensical to ask the government, which believes him to be incompetent, to bear the burden of proving his competence. Instead the government's burden must logically be that of proving its position on the competency issue by a preponderance of the evidence. *See United States v. Blohm,* 579 F.Supp. 495, 499 (S.D.N.Y.1983); *see also* Recommended Ruling at 11. In the instant case, however, the court notes that the placing of burdens is not outcome determinative. The defendant has presented ample and credible evidence to show his present ability to assist counsel. The government's evidence to the contrary, as noted above, goes more to the issue of possible future disruptive behavior on the defendant's part than to the issue of his ability rationally to consult with his lawyers.